UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————X

RHONA ALEDIA,

                          Plaintiff,                    Case No. 08 Civ 4342 (BSJ)(HBP)

          -against-                                     **AFFIDAVIT IN OPPOSITION
                                                        TO MOTION TO DISMISS**

HSH NORDBANK AG,

                          Defendant.
——————————————————————————X

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF ORANGE           )

          Michael J. Matsler, an attorney, being duly sworn, deposes and says:

          1.        I am a member of the firm of Rider, Weiner & Frankel, P.C., attorney for the

plaintiff, Rhona Aledia.  I am familiar with the papers and proceedings in this matter.  I submit

this affidavit, together with the accompanying Memorandum of Law and Affidavit of Rhona

Aledia, sworn to on June 12, 2008, in opposition to Defendant's motion to dismiss the complaint

pursuant to FRCP Rule 12(b)(6).

          2.        Ms. Aledia was employed by the Defendant bank for over three years in a senior

position.  At the date of her forced resignation on February 19, 2008, she was owed $229,586 in

vested incentive compensation.

          3.        The complaint, originally filed in state court, contains four Causes of Action

regarding Plaintiff-Employee's right to payment of her vested incentive compensation and vested

deferral amounts, which have been wrongfully withheld by Defendant-Employer.

4.     As more fully discussed in Ms. Aledia's Memorandum of Law, Defendant's motion should be denied in its entirety. Defendant has failed to meet its heavy burden. All factual allegations in the complaint must be accepted as true and all reasonable inferences drawn in the Plaintiff's favor. The Defendant has not shown, beyond a reasonable doubt, that Plaintiff can prove no set of facts to entitle it to relief. The Defendant relies upon documentary evidence submitted together with its motion to dismiss; however, this documentary evidence serves only to substantiate the allegations of the complaint, rather than invalidate the allegations beyond a reasonable doubt. Defendant's own records establish that Ms. Aledia's incentive compensation vested, and the law provides that having vested, it must be paid. If any party is entitled to judgment it can only be Ms. Aledia.

5.     Ms. Aledia's First claim for relief is for breach of Defendant's agreement to pay compensation owed. Ms. Aledia's incentive award and deferral amounts became vested and mandatory "earned wages" under both common and statutory law in accordance with the conditions set forth in Defendant's incentive compensation plan and her letter of employment; ; and pursuant to Defendant's 2007 Incentive Statement. (Von Kistowsky Affidavit Exhibits A and B). At a minimum, whether Plaintiff's vested incentive award and vested deferral amounts constitute earned wages presents a question of fact. (See Complaint, Ex. "1" hereto with attached 2007 Incentive Statement as exhibit A thereto).

6.     Ms. Aledia's Second claim for relief is for breach of Defendant's implied duty of good faith and fair dealing regarding Ms. Aledia's right to payment of the remaining deferred amounts. Whether Ms. Aledia's remaining deferred amounts constitute earned wages is a question of fact. Under New York law, the remaining deferred amounts had in fact been earned with the only condition to payment being Ms. Aledia's continued employment with Defendant.

As alleged in the complaint, Defendant breached its implied duty of good faith and fair dealing with regard to Ms. Aledia's rights under her compensation agreement, thus wrongfully preventing Ms. Aledia from fulfilling the condition to payment of the remaining deferred amounts.

7.    With regard to the Third claim, Ms. Aledia is entitled to plead quasi-contract theories in the alternative and should not be forced to an election at this premature stage.

8.    Ms. Aledia's Fourth claim for relief is based on willful violation of New York State Labor Law §§ 193(1) and 198(1-a), in that Defendant wrongfully and willfully withheld Ms. Aledia's earned wages.

9.    For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

Dated: June 12, 2008        Rider, Weiner & Frankel, P.C.
      New Windsor, NY        Attorneys for Plaintiff Rhona Aledia
                          655 Little Britain Road
                          New Windsor, NY 12553
                          (845) 562-9100

                    By:    _____
                              Michael J. Matsler (MM8139)

TO:    David Rabinowitz, Esq.
       Moses & Singer LLP
       Attorneys for Defendant HSH Nordbank AG
       The Chrysler Building
       405 Lexington Avenue
       New York, New York 10174
       (212)-554-7800

Sworn to me before this
16th day of June, 2008

Notary Public

YURMARIS RENELT
Notary Public - State of New York
01RE6137275
Qualified in ORANGE County
My Comm. Expires NOVEMBER 21, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

RHONA ALEDIA,

                        Plaintiff,                    Case No. 08 Civ 4342 (BSJ)(HBP)

    -against-                              **AFFIDAVIT OF RHONA ALEDIA**

HSH NORDBANK AG,

                        Defendant.
———————————————————————X

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF ORANGE    )

    RHONA ALEDIA, being duly sworn, deposes and says:

    1.    I am the Plaintiff in the above-captioned action. I submit this affidavit in opposition to Defendant's motion to dismiss the complaint.

    2.    On January 25, 2005, I accepted Defendant's offer of employment as Vice President/Structured Commodity Finance at a base salary of $164,000.

    3.    Due to my performance in 2005, I was awarded an incentive bonus of $135,000.

    4.    In December 2006, in recognition of my individual performance, I was promoted to Senior Vice President, and my base salary was raised to $185,000, effective January 1, 2007. In addition to promotion, I was awarded an incentive bonus of $250,000 for the year 2006.

    5.    In December 2007, in recognition of my individual performance, I was promoted to Senior Vice President, and my base salary was raised to $185,000, effective January 1, 2008.

6.     Annexed hereto as Exhibit "2" is a copy of my performance evaluation for 2007.  In general, I "far exceeded" the Defendant's expectations in every category.  Of particular note, my supervisor David Lopez commented as follows:

> . . . Strength continues to be very visible in client relationships, especially in developing ideas and solutions to meet client needs **in line with Bank credit and administrative guidelines**. . . [emphasis added]

> . . . Skills in overall business transactions, from structuring through execution and valuable experience were manifested to influence the transaction process towards the **successful completion of transactions to the satisfaction of clients and Bank standards**, especially in challenging situations and problem-solving events. . . [emphasis added]

> . . . This year, she improved in taking HSH Nordbank to being market competitive and a substantive player, both among Brazilian banks and lending banks. . .

> . . . Her contributions have been very valuable in the areas of Client, Financial and Team and she will be highly instrumental towards expanding the Commodity and Finance business in Latin America.

7.     On January 25, 2008, due to my individual performance for the year 2007 and my contributions to the bank's profitability, my incentive compensation award for 2007 was fixed at $250,000 as my employer stated in the 2007 Incentive Statement that "Senior Management of HSH Nordbank AG, New York Branch would like to thank you for your efforts which contributed to our successful branch performance in 2007.  Additionally, we would like to commend you on your professional and positive attitude to our business, and the unique contribution you have made to our team".  As per Defendant's Deferral Plan and Incentive Statement, $221,250 vested and was to be paid on February 15, 2008 along with vested deferral compensation of $8,336 from 2005-2006.  (See ex. A to the Complaint, Exhibit "1").

8.     What happened next is set forth in detail in my complaint.  In late January 2008, I traveled to Defendant's headquarters in Germany.  During that trip, I met with Bernard Visker, one of Defendant's managing Board members, who directed me to disclose my observations of

2

potential misconduct committed by David Lopez, my direct supervisor in Defendant's New York City office. Mr. Visker assured me that our discussion would remain confidential. I disclosed my observations, although I was concerned about the possibility of retaliation. Mr. Visker asked for my further cooperation if requested and stated that I would not be asked to do anything with which I was not comfortable (Exhibit A, Complaint ¶¶11-13).

9.      Upon my return to New York City, Klaus Bernhart, chief of the bank's New York City office, and Jon Karnofsky, General Counsel, asked me to discuss with them what I had told Mr. Visker. I complied with their request. On February 12, 2008, I was again questioned by Roland Kiser, General Manager, and Jon Karnofsky, General Counsel. They then informed me that payment of my 2007 vested incentive award and 2005-2006 vested deferral amounts would not be made. They stated that my supervisor David Lopez had apparently alleged that he thought I may have "concealed" certain unspecified records relating to client credit applications in violation of unspecified bank "policies". I told them that it was impossible for me to "conceal" files because my files are either physically placed in shared department folders or electronically filed in a shared drive to which every department team member has access. I told them that even when traveling, my file cabinets are always unlocked, and team members have access to my electronic files and office computer at all times. I pointed out that all client credit applications submitted to the board of directors for consideration required, and had in fact, received David Lopez's approval and signature. As they well knew, my role was limited to client origination. Credit applications are prepared and independently verified by credit analysts directly reporting to Mr. Lopez, who then approves these applications and submits them to the board of directors for consideration.

10.    When I asked why I was being investigated instead of Mr. Lopez, Mr. Kiser stated that I should not be surprised that the company would retaliate against me for having spoken out.

11.    By February 14, 2005, I had not received any formal written notification regarding the withholding of my 2007 vested incentive award and 2005-2006 vested deferral amounts, nor did I receive any formal written notification regarding what bank policies or standards I allegedly violated. I repeatedly asked Mr. Kiser and Mr. Karnofsky to tell me the specific policies that Mr. Lopez claimed I had allegedly violated. They did not respond to my requests. (Exhibit A, Complaint ¶¶14-15).

12.    I was duly employed on the Payment Date of February 15, 2008 and beyond, and therefore fulfilled all conditions necessary for payment. Despite my requests, Defendant failed or refused to pay me.

13.    Defendant's failure to pay me was purely retaliatory and in bad faith. In light of my prior promotions, raises, compensation awards, and performance evaluation, Defendant's after-the-fact, unspecified accusations are nothing short of malicious. For my performance in 2007, the same year in which these alleged policy violations took place, I was promoted, rewarded, and explicitly praised for superbly performing my job "in line with Bank credit and administrative guidelines" and "to the satisfaction of Bank standards". It is readily apparent that any alleged policy violation on my part is completely fabricated.

14.    The real reason that payment of my 2007 incentive award and 2005-2006 deferral amounts were withheld is evident. My disclosures to Mr. Visker brought unwanted scrutiny upon Mr. Lopez and the senior management of the New York Branch Office as a whole. In an effort to punish me, force me to resign, and forfeit my incentive awards, my superiors in the New York

4

Branch Office wrongfully withheld payment that already been earned and promised in accordance with bank policy.

15.     I respectfully request that Defendant's motion to dismiss should be denied.

Dated: New Windsor, New York
        June 12, 2008

RHONA ALEDIA

Sworn to me before this
12th 11th day of June, 2008.

Notary Public

YURMARIS RENELT
Notary Public - State of New York
01RE6137275
Qualified in ORANGE County
My Comm. Expires NOVEMBER 21, 2009

5

Exhibit "1"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-------------------------------------------------------------X

RHONA ALEDIA,

Date Filed: _____

Plaintiff,

SUMMONS

-against-

Index No. **2008 - 004429**

HSH NORDBANK AG,

Plaintiff designates Orange
County as the place of trial
pursuant to CPLR 503(a).

Defendant.

Assigned Judge:

-------------------------------------------------------------X

To the above-named Defendant:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on
the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the date of service (or
within 30 days after the service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be taken against you
in default for the relief demanded herein.

Dated: April 28, 2008
       New Windsor, New York

Rider, Weiner & Frankel, P.C.
Attorneys for Plaintiff
655 Little Britain Road
New Windsor, New York  12553
(845)562-9100

By: _____
        Michael J. Matsler

**Defendant's address:**

HSH Nordbank AG
230 Park Avenue
New York, NY 10169

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE, STATE OF NEW YORK

————————————————————————— X

RHONA ALEDIA,

                         Plaintiff,

    v.

HSH NORDBANK AG,

                         Defendant.

————————————————————————— X

VERIFIED COMPLAINT

Index No.: **2008-004429**

Assigned Judge:

Plaintiff Rhona Aledia, by her attorneys Rider, Weiner & Frankel, P.C., complaining of the Defendant, alleges as follows:

1.    Plaintiff Rhona Aledia is a citizen of the State of New York residing at 232 Maybrook Road, Town of Hamptonburgh, Orange County, New York.

2.    Upon information and belief, Defendant HSH Nordbank AG is a foreign corporation doing business in the State of New York with a principal place of business located at 230 Park Avenue, New York, New York.

## STATEMENT OF FACTS APPLICABLE TO ALL CAUSES OF ACTION

3.    In January 2005 Ms. Aledia accepted Defendant's written offer of employment as Vice-President of the Structural Commodity Finance Department pursuant to an employment compensation agreement (the "Agreement") dated January 19, 2005, drafted by Defendant and signed by both parties, which she accepted in reliance on Defendant's written promises and representations relating to payment of a base salary and payment of a yearly "incentive compensation award" conditioned upon her being an employee as of the Payment Due Date of the award.

4.    Defendant required that all incentive compensation awards be subject to its "mandatory deferred compensation plan" (the "Deferral Plan"). Under this plan, all incentive compensation awarded for the year just ended equal to $100,000 or less became vested and payable immediately; all amounts over $100,000 became vested and payable immediately except as to a specified percentage, based on a graduated scale commensurate with the amount of the award, which was to be deferred. Such deferral compensation, in turn, was subject to a four-year vesting schedule with accrued interest.

5.    Pursuant to the Agreement, Ms. Aledia duly undertook performance of her duties and fulfilled all conditions required under her Agreement and the mandatory deferred compensation plan. As a result of Ms. Aledia's exemplary performance, Defendant awarded and paid her incentive compensation of $135,000 for the year 2005 and $250,000 for the year 2006. Pursuant to the Deferral Plan, $4,594 was withheld from her 2005 award, and $28,750 was withheld from her 2006 award.

6.    In December 2007, Ms. Aledia was promoted from Vice President to Senior Vice President, effective January 1, 2008, in recognition of her individual performance and contribution to the bank's successful results. Her annual base compensation was increased to $185,000.

7.    On January 25, 2008 Defendant issued Ms. Aledia her 2007 Incentive Statement. (A copy of the Incentive Statement is annexed hereto as Exhibit "A"). Defendant awarded Ms. Aledia incentive compensation of $250,000 as a result of her exceptional services which contributed to Defendant's "successful branch performance in 2007." Defendant further wrote that "additionally, we would like to commend you on your professional and positive attitude to our business, and the unique contribution you have made to our team." (See Exhibit "A").

2

8.    Pursuant to Defendant's mandatory deferred compensation plan, $28,750 of the $250,000 incentive award for 2007 was deferred for future payment to Ms. Aledia, while $221,250 of the incentive compensation vested immediately.

9.    The Incentive Statement further stated that, pursuant to the Deferral Plan, $8,336 of Plaintiff's prior deferrals from 2005 and 2006 were now vested and payable immediately. (See Exhibit "A")

10.    Pursuant to the terms of the Agreement and the Deferral Plan, Defendant's Incentive Statement fixed the Payment Due Date of Ms. Aledia's 2008 vested incentive compensation and vested deferrals for February 15, 2008, as follows: "All awards and deferrals will be paid to you via Payroll on February 15, 2008." (See Exhibit "A")  In total, Defendant was obliged to pay Ms. Aledia $229,586 on February 15, 2008.

11.    Shortly after Defendant issued the Incentive Statement, Ms. Aledia traveled to Defendant's headquarters in Germany.

12.    During that trip, Bernhard Visker, one of Defendant's directors, ordered Ms. Aledia to meet with him to discuss concerns he had regarding improper business arrangements, potential conflicts of interest, and other improprieties on the part of David Lopez, Ms. Aledia's direct supervisor in Defendant's New York City office.

13.    On January 30, 2008, Ms. Aledia met with Mr. Visker as directed.  She expressed her concern that her supervisor would retaliate against her if she spoke out.  Mr. Visker assured Ms. Aledia that their discussion would remain confidential, and ordered her to discuss what she had observed on the part of her supervisor and third parties.  As directed by Mr. Visker, Ms. Aledia disclosed her observations.

3

14.    On February 1, 2008, following Ms. Aledia's return from Germany, she was asked by Klaus Bernhart, General Manager of the New York City office, to attend a meeting with him and Jon Karnofsky, General Counsel to HSH, to recount what she had told to Bernhard Visker.

15.    Shortly thereafter, Ms. Aledia's supervisor, David Lopez, accused her of failing to follow unspecified company policies. Ms. Aledia repeatedly requested that Defendant inform her of the specific policies her supervisor now claimed, for the first time, she had allegedly violated. Defendant did not respond to Ms. Aledia's requests.

16.    On or about February 12, 2008, Ms. Aledia was informed by Roland Kiser, General Manager for Operations, and Jon Karnofsky, General Counsel, that payment of her vested incentive compensation award and vested deferral amounts would not be made. In direct contradiction of the terms of Defendant's own Agreement and Deferral Plan, Ms. Aledia was told that her vested incentive compensation award for 2007 and vested deferred amounts were payable solely at the discretion of Defendant.

17.    Ms. Aledia was duly employed by Defendant on February 15, 2008 and beyond, and fulfilled all conditions entitling her to payment of her vested incentive compensation and vested deferred compensation.

18.    As a result of the Defendant's willful and malicious acts and the intolerable atmosphere of hostility and oppression created by Defendant, Ms. Aledia was forced to submit her resignation on February 19, 2008.

19.    At the time of Ms. Aledia's forced resignation she had accrued three unused vacation days for 2008 worth $2,193, as well as five unused vacation days for 2005-2007 worth

4

$3,656.00, for a total of $5,849.00 worth of unused vacation days which Defendant failed or refused to pay.

## FIRST CAUSE OF ACTION

20.    Ms. Aledia repeats and realleges her allegations in paragraphs "1" through "19" as if fully stated herein.

21.    Despite her requests, Defendant failed or refused to pay Ms. Aledia her vested 2007 incentive compensation and her vested deferred amounts along with accrued vacation pay, thereby breaching its Agreement and the terms of the Deferral Plan.

22.    On March 27, 2008 and April 14, 2008 Ms. Aledia again demanded payment from the Defendant.

23.    Although duly demanded, Defendant has wrongfully failed or refused to make payment.

24.    As a result of Defendant's breach, Ms. Aledia has suffered damages in a principal amount no less than $235,435 plus interest in an amount to be determined.

## SECOND CAUSE OF ACTION

25.    Ms. Aledia repeats and realleges her allegations in paragraphs "1" through "24" as if fully stated herein.

26.    Defendant by its malicious and inequitable conduct breached its implied duty of good faith and fair dealing and engaged in a campaign to force Ms. Aledia to resign her position, resulting in her constructive termination, in a wrongful attempt to claim a forfeiture of her compensation.

27.    Defendant's wrongful, bad faith breach and constructive termination excused Ms. Aledia from further performance on her part and from fulfilling any remaining conditions on

5

which the vesting of her remaining deferred compensation amounts are based; and Defendant is otherwise estopped from asserting any conditions in the Agreement and Deferral Plan as a bar to Ms. Aledia's recovery of her remaining withheld deferred compensation. As a result of Defendant's wrongful conduct and breach, Ms. Aledia has suffered consequential damages in the principal amount of $53,760 for earned, but deferred, incentive compensation, which would have become vested in the ordinary course of business but for Defendant's malicious, inequitable conduct and breach of contract.

## THIRD CAUSE OF ACTION

28.    Ms. Aledia repeats and realleges her allegations in paragraphs "1" through "27" as if fully stated herein.

29.    Ms. Aledia, in reasonable reliance upon Defendant's promises and representations to pay her incentive compensation, performed valuable services for the Defendant in the years 2005, 2006, 2007, and through February 19, 2008, which Defendant accepted and from which it profited.

30.    Despite due demand, Defendant has failed or refused to pay all compensation due Ms. Aledia for said services, thereby unjustly enriching itself to Ms. Aledia's detriment, and causing Ms. Aledia to suffer damages in a principal amount no less than $289,195, plus interest in an amount to be determined.

## FOURTH CAUSE OF ACTION

31.    Ms. Aledia repeats and realleges her allegations in paragraphs "1" through "30" as if fully stated herein.

32.    Defendant is an employer within the meaning of the New York State Labor Law, and is subject to all the duties and obligations set forth therein.

6

33.    Ms. Aledia is an employee within the meaning of the New York State Labor Law, and is entitled to all the rights set forth therein.

34.    Pursuant to the terms of the Agreement and the Deferral Plan, Defendant was obliged to pay Ms. Aledia $229,586.00 in vested incentive compensation and vested deferral amounts, plus interest, on February 15, 2008  (See Exhibit "A")

35.    As of February 19, 2008, Defendant was additionally obliged to pay Ms. Aledia for three unused vacation days in 2008 worth $2,193.00, as well as five unused vacation days for 2005-2007 worth $3,656.00, for a total amount of $5,849.00.

36.    Defendant has wrongfully withheld payment of Ms. Aledia's incentive compensation, vested deferral amounts, and unused vacation pay.  Although duly demanded, Ms. Aledia has not received payment of the vested incentive compensation, vested deferral amounts, or unused vacation days due to her.

37.    Defendant's withholding of payment to Ms. Aledia or refusal to pay is a violation of Article 6 of New York's Labor Law, by reason of which Ms. Aledia has been damaged in an amount no less than $289,195, plus interest.

38.    Pursuant to Labor Law §198.1-a, Ms. Aledia is entitled to an award of liquidated damages in an amount equal to 25% of the amount of compensation owed, as well as an award of attorneys' fees and costs in an amount to be determined.

7

**WHEREFORE**, Plaintiff Rhona Aledia respectfully request judgment against Defendant HSH Nordbank AG as set forth above, together with interest and an award of attorneys' fees and costs; and such other relief as the Court deems proper.

Dated: April 28, 2008
      New Windsor, NY

Rider, Weiner & Frankel, P.C.
Attorneys for Plaintiff
655 Little Britain Road
New Windsor, NY 12553
(845)562-9100

By: _____
          Michael J. Matsler

8

RIDER, WEINER & FRANKEL, P.C.
P. O. BOX 2280   •   NEWBURGH, N. Y. 12550   •   (845) 562-9100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE, STATE OF NEW YORK

---------------------------------------------------------X

RHONA ALEDIA,                                                    VERIFICATION

                            Plaintiff,

            v.                                                          Index No.:

HSH NORDBANK AG,

                            Defendant.                          Assigned Judge:

---------------------------------------------------------X

STATE OF NEW YORK          )
                           ) SS:
COUNTY OF ORANGE           )

       Rhona Aledia, being duly sworn deposes and says:

       I am the plaintiff in the within action. I have read the annexed complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe to be true based on my recollection of the events leading to the complaint as well as documents referred to therein.

 

                                                       _____
                                                       Rhona Aledia

Sworn to before me this
28th day of April, 2008.

_____
     Notary Public

YURMARIS RENELT
Notary Public - State of New York
01RE6137275
Qualified in ORANGE County
My Comm. Expires NOVEMBER 21, 2009

8

Exhibit A

# NORDBANK



PERSONAL – STRICTLY PRIVATE & CONFIDENTIAL

## 2007 INCENTIVE STATEMENT

January 2008

### Rhona Aledia

Senior Management of HSH Nordbank AG, New York Branch would like to thank you for your efforts which attributed to our successful branch performance in 2007. Additionally, we would like to commend you on your professional and positive attitude to our business, and the unique contribution you have made to our team.

We are pleased to inform you that you have been awarded a discretionary total incentive bonus of $250,000. This amount will be payable as follows:

| | | |
|---|---|---|
| Total cash award 2007: | $221,250 | (before statutory deductions) |
| Total deferred 2007 | $28,750 | |
| **Total Incentive Bonus 2007** | **$250,000** | |

In accordance with the Deferred Compensation Program vesting schedule, an additional $8,336 (before statutory deductions) shall be paid to you this year. For your reference, we have attached your annual deferral and vesting schedule sheet.

All awards and deferrals will be paid to you via Payroll on February 15, 2008.

As we move forward in 2008, we will continue to count on your support in helping us to achieve our branch goals and objectives.

Please note that your individual compensation arrangements are confidential, and that the contents of this letter must not be discussed with anyone other than with your immediate Supervisor.

Sincerely,

HSH Nordbank AG,
New York Branch

Klaus Bernhart
General Manager

Ruth von Kistowsky
Human Resources

# Master Individual Deferral Sheet

Last Name: **Aledia**
OR
Employee ID #: _____

Step 1:
Enter Participant Last Name
OR
Employee ID #

## Annual Deferrals

| Deferral Year | Employee ID # | Last Name | First Name | Annual Incentive | Deferred Dollars At Each Increment | | | | | Annual Deferral | Deferral Return % |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | 0-100,000 | 100,001-200,000 | 200,001-500,000 | 500,001-750,000 | 750,000+ | | |
| 2005 | 8 | Aledia | Rhona | $135,000 | $6,125 | | | | | $4,594 | 7.50% |
| 2006 | 28 | Aledia | Rhona | $250,000 | $0 | $17,500 | $11,250 | | | $28,750 | 7.50% |
| 2007 | | Aledia | Rhona | $250,000 | $0 | $17,500 | $11,250 | | | $28,750 | 7.50% |
| 2008 | | | | | | | | | | | |
| 2009 | | | | | | | | | | | |
| 2010 | | | | | | | | | | | |
| 2011 | | | | | | | | | | | |
| 2012 | | | | | | | | | | | |
| **TOTAL** | | | | **$635,000** | | | | | | **$62,094** | |

| Tot. Interest (after 4 yrs) |
| --- |
| $998 |
| $6,246 |
| $6,246 |
| |
| |
| |
| |
| |
| **$13,489** |

## Vesting Schedule

| Year | Feb '07 | Feb '08 | Feb '09 | Feb '10 | Feb '11 | Feb '12 | Feb '13 | Feb '14 | Feb '15 | Feb '16 | Feb '17 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 2005 | $1,148 | $1,148 | $1,148 | $1,148 | | | | | | | |
| 2006 | | $7,188 | $7,188 | $7,188 | $7,188 | | | | | | |
| 2007 | | | $7,188 | $7,188 | $7,188 | $7,188 | | | | | |
| 2008 | | | | | | | | | | | |
| 2009 | | | | | | | | | | | |
| 2010 | | | | | | | | | | | |
| 2011 | | | | | | | | | | | |
| 2012 | | | | | | | | | | | |
| **TOTAL** | $1,148 | $8,336 | $15,523 | $15,523 | $14,376 | $7,188 | $0 | $0 | $0 | $0 | $0 |
| **INTEREST** | $345 | $2,440 | $4,155 | $3,302 | $2,310 | $937 | $0 | $0 | $0 | $0 | $0 |

TOTAL $13,489

NOTE: Returns on deferrals are **not** included in any of the above calculations

Exhibit "2"

HSH Nordbank AG, New York Branch                    Performance Measurement

## Self Evaluation 2007

### Evaluatee

| | |
|---|---|
| **Name:** | **Corporate Title:** |
| RHONA ALEDIA | SENIOR VICE PRESIDENT |
| **Department:** | **Business Area / Function:** |
| STRUCTURED COMMODITY FINANCE | TRANSPORTATION |
| **Location:** | **Evaluating Manager:** |
| 230 Park Avenue, 32nd Floor, New York 10169 | DAVID LOPEZ MENENDEZ |

### Rating Scales

(These scales inform the rating of individual Contribution areas and Competencies. Please refer to this page as you work through the form.)

### Contribution:  WHAT the Evaluatee has achieved

| Rating | Description |
|---|---|
| 1 | **Far exceeded**<br>ALL objectives were met and ALL targets were significantly exceeded |
| 2 | **Exceeded**<br>ALL objectives were met and SOME targets were significantly exceeded |
| 3 | **Fully Met**<br>ALL objectives and targets were met |
| 4 | **Partially Met**<br>SOME objectives and targets were met |
| 5 | **Not Met**<br>FEW or NONE of the objectives and targets were met |
| X | **Not applicable**<br>Contribution in this performance area is not required by the role |

### Competency:  HOW the Evaluatee has achieved the results

| Rating | Description |
|---|---|
| A | **Transfers competency**<br>Leverages competency (as below) AND actively and successfully develops competencies in others. |
| B | **Leverages competency**<br>Always demonstrates the behaviours at the appropriate time. Understands when this competency is critical to success and exploits it fully to deliver business results |
| C | **Demonstrates competency**<br>Demonstrates this competency effectively by applying all behaviours in the majority of circumstances |
| D | **Competency to be developed**<br>Partially demonstrates this competency, but some behaviours are either insufficiently developed or are demonstrated infrequently/ inappropriately |
| E | **Competency not demonstrated**<br>Most or all behaviours for this competency are not demonstrated or demonstrated very infrequently |
| X | **Not applicable**<br>Demonstration of this competency is not required by the role OR there is insufficient performance information to determine a rating |

HSH Nordbank AG, New York Branch                         Performance Measurement

## Client

Meeting the needs and expectations of our clients (internal and external) with the highest quality products and services. Building and maintaining client relationships.

**Contribution:**
Please rate and comment on WHAT the Evaluatee has achieved.
Measure results against existing objectives or your expectations of the role.

| X | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | X |

**Competency:**
Please rate and comment on HOW the Evaluatee has achieved the results.
Measure results against performance standards.

| X | E | D | C | B | A |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | X |

Please rate Client competency in more detail on "Competency Details" page

Please comment on:
**Achievements and Strengths:**

Strength continues to be very visible in client relationships and service, especially in developing ideas and solutions to meet client needs in line with Bank credit and administrative guidelines. She has developed the trust and reliability that clients seek and depend in business relationships. Skills in overall business transactions, from structuring through execution and valuable experience were manifested to influence the transaction process towards the successful completion of transactions to the satisfaction of clients and Bank standards, especially in challenging situations and problem-solving events.

Achievement was best demonstrated by new business volume generated, especially co-led/co-arranged/participated transactions with major reputable financial institutions (Rabobank, Banco ABC, Banco Itau, Commerzbank, Standard Bank) and existing volume of business retained and expanded/increased. Two new major relationship developed for the New York Branch in 2007 were Bunge and Louis Dreyfus, which were successfully originated in the US, with HSH Nordbank as first time bank lender into their US corporate facilities, that should generate additional business and stronger offtaker relationship in Latin America. With SCF not having benefit of syndication support, have successfully stepped up to syndication and sell-down requirements that further increased profitability. With SCF not having a dedicated staff covering the US market, have adequately serviced existing US customers and further expanded business volume, especially with 2 major commodity companies - Louis Dreyfus and Lansing.

**Areas for Improvement:**

For 2008, need to stand back from day to day details of transactions in order to focus on longer-term strategy that can further expand Commodity Finance business in Latin America.

## People / Team

Attracting, retaining and developing high calibre people who are committed to delivering results through individual excellence and effective teamwork

**Contribution:**
Please rate and comment on WHAT the Evaluatee has achieved
Measure results against existing objectives or your expectations of the role.

| X | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | X |

**Competency:**
Please rate and comment on HOW the Evaluatee has achieved the results.
Measure results against performance standards.

| X | E | D | C | B | A |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | X |

Please rate People competency in more detail on "Competency Details" page

HSH Nordbank AG, New York Branch                           Performance Measurement

Please comment on:
**Achievements and Strengths:**

Her unfailing commitment and continuing enthusiasm towards delivering exceptional results have positive effects on individual performance and the performance of the team to do the same. Consistently displays a personal level of dedication, professionalism towards her work that generate an equally high level of collaboration and cooperation across functional teams. Her people/teams skills continued to be highly instrumental in developing and maintaining business relationships with challenging clients. Most important attribute is ability to train/pass on experience and knowledge to junior staff that benefits the team.
Have far exceeded objectives and expectations of the role mainly due to the following:

- She developed SCF training module for Loan Administration and conducted very helpful and successful sessions with Loan Administration covering all aspects of the commodity finance business that have translated in their better understanding and more efficient processing of transactions. This also saved the bank costs that would have been paid to external agencies/parties.
- She successfully trained Senior Credit Analyst, Mariano Urquiola through the credit and structuring process to being a full-pledged Relationship Manager.
- Effective teamwork was globally demonstrated through her support and contribution to the Singapore Branch that was always very thorough, complete and prompt.
- Provided CRM staff assigned in New York with an effective orientation of SCF activities and resolution of credit-related issues.

She has fostered a closer team relationship by personally organizing out-of-office events for the New York team and branch visitors.

**Areas for Improvement:**

Need to reduce rigidity in collaboration across teams and lower expectations that are at times too high.

---

## Financial

Generating financial results through operational efficiency & innovation, which increase profitability and shareholder value

**Contribution:**

| | X | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|
| Please rate and comment on WHAT the Evaluatee has achieved. | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Measure results against existing objectives or your expectations of the role | | | | | | X |

**Competency:**

| | X | E | D | C | B | A |
|---|---|---|---|---|---|---|
| Please rate and comment on HOW the Evaluatee has achieved the results. | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Measure results against performance standards | | | | | | X |

Please rate Economic competency in more detail on "Competency Details" page

Please comment on:
**Achievements and Strengths:**

Problem solving of business transactions, especially quantitative and financial aspect of structures is best strength. Exhibits decisiveness and follows through situations that result in increased profitability. Continues to demonstrate very strong business skills and identification, mitigation and managing risks in all aspects of the transaction. Able to negotiate with peer financial institutions successfully towards HSH Nordbank benefit due to strength in financial skills and innovativeness. Very logical in analysis of credit and legal risks that have resulted in excellent payment performance in 2007, and determination towards collateral performance from clients resulted in full compliance by end of 2007, that overall, increased profitability due to no delinquencies and defaults in 2007.
Have generated volume and revenues, both from fee-based and interest margins, far above objectives and expectations, especially covering the US market in the absence of staff. Have developed a substantial deals pipeline going into 2008.

**Areas for Improvement:**

None.

---

## Functional / Technical (this section is for Middle/Back-Office only)

Advancing and exploiting our professional and technical expertise to achieve and maintain competitive advantage

**Contribution:**

| | X | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|---|
| Please rate and comment on WHAT the Evaluatee has achieved. | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Measure results against existing objectives or your expectations of the role | | | | | | |

## HSH Nordbank AG, New York Branch

Performance Measurement

**Competency:**
Please rate and comment on HOW the Evaluatee has achieved the results.
Measure results against performance standards.

|   | X | E | D | C | B | A |
|---|---|---|---|---|---|---|
|   | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Please rate Functional/Technical competency in more detail on "Competency Details" page

Please comment on:
**Achievements and Strengths:**


**Areas for Improvement:**

HSH Nordbank AG, New York Branch                    Performance Measurement

# Competency details

Please rate the following competences. For more information please refer to the Performance Standards.

## Client

| | | X | E | D | C | B | A |
|---|---|---|---|---|---|---|---|
| **Strategic & Global Perspective** Being committed to the Bank's global business strategy and understanding how it relates to one's own function and role. Contributing where appropriate to strategy formulation. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Managing Client Relationships & Service** Building trust and mutual respect with clients. Understanding and anticipating their needs, in order to achieve outcomes which benefit both the client and the Bank. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Networking & Influencing** Building and using networks of key influencers, both internal and external as appropriate to achieve business results. Having the impact required to influence others. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Cross Product Co-operation** Collaborating effectively across products, teams and business areas. Identifying and exploiting opportunities to cross-sell within the Bank. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |

## People / Team

| | | X | E | D | C | B | A |
|---|---|---|---|---|---|---|---|
| **Building & Leading a Team** Recruiting (where appropriate), developing, motivating and retaining high calibre people to achieve shared business goals. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Teamwork** Working collaboratively in functional or cross-functional teams, towards shared goals. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Drive & Commitment** Demonstrating energy and effort, consistently striving for excellence and overcoming barriers. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Valuing Diversity** Values views, opinions and insight from all individuals. Promotes an inclusive culture, leverages the perspectives and experience of others to gain competitive advantage. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |

## Financial

| | | X | E | D | C | B | A |
|---|---|---|---|---|---|---|---|
| **Innovation & Continuous Improvement** Being creative in developing new ideas and approaches; challenging the status quo and making significant improvements in products, processes and services. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Problem Solving & Decision Making** Identifying key issues; using logical analysis and conceptual thinking to resolve problems and reach sound business decisions. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Leveraging Resources** Planning, organising and implementing the effective use of resources. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |
| **Managing Risk** Identifying and assessing risk using all available resources and information. Being decisive and knowing when to take calculated risk, upholding the bank's reputation. | | ☐ | ☐ | ☐ | ☐ | ☐ | X |

## Functional / Technical (this section is for Middle/back-Office only)

| | | X | E | D | C | B | A |
|---|---|---|---|---|---|---|---|
| **Professional Behaviour** Demonstrating a full understanding of the professional, ethical and legal standards required in a business area of HSH Nordbank AG, and consistently acting within this framework. | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Product & Process Knowledge** Having the detailed knowledge and understanding of core products and/ or processes which are essential to the achievement of individual objectives within a role. | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Business & Technical Expertise** Having other specialist knowledge and applied skills which support the achievement of business objectives, and are required to be fully effective in the role. | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

HSH Nordbank AG, New York Branch                           Performance Measurement

## Performance summary

|  | Contribution: | | | | | Competency: | | | |
|---|---|---|---|---|---|---|---|---|---|
| Overall ratings: | 5 | 4 | 3 | 2 | 1 | E | D | C | B | A |
|  | □ | □ | □ | □ | X | □ | □ | □ | □ | X |

### Evaluating Manager's overall / additional comments:

She is dependable with certainty in all aspects of operations in Structured Commodity Finance – she completes transactions with due diligence, decisively and successfully. Very result-oriented, always exhibiting enthusiasm towards tasks that need to be done.

She consistently steps up in difficult situations, internally (especially with respect to CRM issues in getting transactions followed through and approved) and externally (especially with respect to participating lenders and relationships with peer financial institutions.) This year, she improved in taking HSH Nordbank to being market competitive and a substantive player, both among Brazilian banks and lending banks.

Her contributions have been very valuable in the areas of Client, Financial and Team and she will be highly instrumental towards expanding the Commodity Finance business in Latin America.

### Evaluatee's comments:

Actual financial results for 2007, i.e. revenues and fees increased substantially over 2006, demonstrate the success of approaches and efforts undertaken in 2007.

My efforts and commitment to the business have gone beyond expected scope of work. Without syndication support, I have successfully funded transactions through relationships maintained with leading financial institutions. Without US origination staff, I have not only successfully covered existing client base in the US but expanded volume and expanded US relationship base. I have supported Singapore Branch for common clients by way of thorough and complete flow of information that was consistently prompt. I supported and conducted training initiative for Loan Administration that increased the staff's understanding of Commodity Finance transactions and thereby improved efficiency in Loan Administration support.

Results of achievements are best manifested by the excellent performance of SCF portfolio – no delinquencies, defaults or bad debts in 2007.

Evaluatee's signature: _Aina Allen_

Date: _1/7/2008_

Evaluating Manager's signature

Date: